E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
RACHEL N. AGRESS (Cal. Bar No. 281703)
Assistant United States Attorney
International Narcotics, Money Laundering,
 & Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0487
     Facsimile: (213) 894-6269
     E-mail:  rachel.agress@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:20-CR-00027-JVS-1 |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION REGARDING DEFENDANT MATTHEW CORRALES ESTRADA</u> |
| v. | |
| MATTHEW CORRALES ESTRADA, | Sentencing: December 19, 2022 at 9:30 a.m. |
| Defendant. | Location: Courtroom of the Hon. James V. Selna |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Rachel N. Agress, hereby files its sentencing position with respect to defendant Matthew Corrales Estrada.

//

//

This sentencing position is based upon the attached memorandum of points and authorities and exhibits, the Presentence Report and Recommendation Letter, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 4, 2022          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


        /s/
Rachel N. Agress
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

On September 27, 2022, defendant Matthew Corrales Estrada ("defendant") pleaded guilty to Counts One and Two of the Indictment that charged him with making and presenting False, Fictitious, and Fraudulent Claims Against the United States, causing to be made and presented, and aiding and abetting the making and presentation of False, Fictitious, and Fraudulent Claims Against the United States, in violation of 18 U.S.C. §§ 287, 2(a), (b). (Dkts. 1, 44, 45.)

In the Presentence Report ("PSR"), the United States Probation Office ("USPO") determined that defendant's total offense level under the United States Sentencing Guidelines (the "Guidelines" or "USSG") is 17, his criminal history category is VI, and the Guidelines sentencing range is fifty-one to sixty-three months' imprisonment. (Dkt. 47.) The government concurs with these calculations.

For the reasons set forth below, the government recommends a low-end guidelines sentence of fifty-one months' imprisonment, three years of supervised release, a $200 special assessment, and restitution in the amount of $16,435.13.[1]

**II. OFFENSE CONDUCT**[2]

Beginning no later than approximately August 2012 and continuing to in or about February 2018, portions of which time defendant was incarcerated, defendant engaged in a scheme to defraud the United

---

[1] As set out below, the government agrees with the USPO's calculation of a restitution amount that is lower than the amount set out in the plea agreement.

[2] Unless otherwise noted, all facts stated herein are established in the PSR (PSR ¶¶ 11-18) and Plea Agreement (Dkt. 44, ¶ 16).

States by preparing and filing false, fictitious and fraudulent tax returns with the Internal Revenue Service ("IRS") under his own name and using the personal identifying information of fellow inmates and others, to obtain tax refunds. One of the types of returns that defendant filed was an IRS Form 1040EZ, an Income Tax Return for Single and Joint Filers with No Dependents that was a shortened version of the IRS Form 1040. Form 1040EZ was available for the years 2015, 2016 and 2017 but was discontinued for the year 2018.

As part of this scheme, defendant obtained personal identifying information from other individuals by promising them that he would obtain refunds for them in exchange for a tax preparation fee. Defendant would file returns claiming an earned income credit and a resulting tax refund on behalf of those individuals or instruct them to do so. On the returns, defendant would use an address affiliated with defendant (belonging to defendant's friends or family), and/or request direct deposit refunds into bank accounts affiliated with defendant (belonging to defendant's friends or family).

In total, defendant filed or caused to be filed at least 120 tax returns with the IRS claiming tax refunds of over $155,636[3] both in his own name and in the names of other individuals. Defendant also attempted to file at least 59 additional tax returns claiming tax

---

[3] The $170,711 amount set out in the plea agreement (Dkt. 44, ¶¶ 4, 16) and in paragraphs 14, 25 and 31 of the PSR is in error, as it mistakenly double-counts certain claimed refunds. The government agrees with the USPO's calculation of $155,636 as the total amount of claimed tax refunds that defendant filed or caused to be filed with the IRS. (PSR ¶ 28.) When combined with the $68,172 of attempted claims, this leads to a total intended loss amount of $223,808, accurately set out in the PSR (PSR ¶ 28). This adjustment does not affect the Guidelines calculations, which are accurately set out in the plea agreement.

refunds of over $68,172 both in his own name and in the names of other individuals, which never reached the IRS because they were confiscated by correctional services technicians at defendant's jail facility, after being mailed by defendant.

Specifically, and for example, at some point prior to December 11, 2015, defendant approached victim C.J.V.M. in jail about doing C.J.V.M.'s taxes and promised C.J.V.M. a refund of over $1,000 in exchange for a fee. Defendant filled out an IRS Form 1040EZ stating that C.J.V.M. had earned $8,000 in income in 2014 as a personal assistant, which was false, and claiming an earned income tax credit and resulting tax refund from the IRS in the amount of $1,295. C.J.V.M. provided defendant with his personal identifying information and signed the form. On or about December 11, 2015, defendant submitted the Form 1040EZ to the IRS containing the false, fictitious, and fraudulent claim in the amount of $1,295, which claim defendant knew to be false, fictitious, and fraudulent in that C.J.V.M., the individual named on the submitted federal income tax return, was not entitled to the refund claimed in the return. Defendant requested that the refund be direct deposited into defendant's Bank of America account ending in 1045. No funds were ultimately paid by the U.S. Treasury on this claim.

As part of the same course of conduct, at some point prior to February 13, 2016, defendant filled out a Form 1040EZ stating that defendant had earned $9,000 in income as a household worker in 2015, which was false, and claiming an earned income tax credit and resulting tax refund from the IRS in the amount of $1,343. On or about February 13, 2016, defendant submitted the Form 1040EZ to the

IRS containing the false, fictitious, and fraudulent claim, which defendant knew to be false, fictitious, and fraudulent in that defendant was not entitled to the refund claimed in the return. Based on that return, the U.S. Treasury issued a check on May 6, 2016 for $903.00, which was cashed by defendant.

In total, defendant caused at least $16,435.13[4] in U.S. Treasury funds to be issued through checks and/or direct deposits into accounts affiliated with defendant through false, fictitious, and fraudulent tax returns. Those tax returns were purportedly submitted on behalf of defendant and more than ten other individuals whose means of identification were used unlawfully or without authority. At the time defendant caused the checks to be issued by the U.S. Treasury on behalf of defendant and those other individuals, and at all relevant times described in this factual basis, defendant was aware that the above mentioned requests submitted by defendant were claims made to the United States or an agency of the United States; these claims were false, fictitious, and fraudulent; defendant knew these claims were false, fictitious, and fraudulent; and defendant made these claims with the intent to deceive the U.S. Treasury.

### III. GUIDELINES CALCULATION

The USPO calculated a total offense level of 17 based on the following calculation:

| | | |
|---|---|---|
| Base Offense Level | 6 | U.S.S.G. § 2B1.1(a)(2) |
| Loss greater than $150,000 but less than $250,000 | +10 | U.S.S.G. § 2B1.1(b)(1)(F) |

---

[4] The $18,597.63 restitution amount set out in the plea agreement (Dkt. 44, ¶¶ 4, 12, 16, 23, 25) and in paragraph 9 of the PSR is in error, as it mistakenly double-counts certain refunds. The government agrees with the USPO's calculation of $16,435.13 as the actual loss amount sustained by the U.S. Treasury. (PSR ¶¶ 20, 133.)

|   |   |   |
|---|---|---|
| Involved ten or more victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| Sophisticated means | +2 | U.S.S.G. § 2B1.1(b)(10) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a) |

(PSR ¶¶ 20-31.) These calculations are consistent with the parties' stipulation in the plea agreement. (Dkt. 44, ¶ 14.)

The USPO calculated a criminal history score of thirty-one and a criminal history category of VI. (PSR ¶¶ 60-62.) Based upon a total offense level of 17 and a criminal history category of VI, the USPO calculated a Guidelines range of fifty-one to sixty-three months' imprisonment. (PSR ¶ 123.) As set out in the PSR, restitution in the total amount of $16,435 is due to the U.S. Treasury. (PSR ¶¶ 20, 133.) The Probation Officer did not identify any factors that would warrant a departure from the applicable sentencing Guideline range (PSR ¶ 135), but recommends a small downward variance of three months from the low-end of the Sentencing Guidelines Range (Dkt. 45, USPO Recommendation Letter at 6).

## IV. THE GOVERNMENT'S SENTENCING RECOMMENDATION

Based on the factors set forth in 18 U.S.C. § 3553(a), and in line with the plea agreement (Dkt. 44, ¶ 5.f.), the government recommends that defendant be sentenced to a low-end guideline range sentence of fifty-one months' imprisonment and three years of supervised release, and be ordered to pay a mandatory special assessment of $200, and restitution in the amount of $16,435.13 to the U.S. Treasury.

### A. A FIFTY-ONE MONTH CUSTODIAL SENTENCE IS SUFFICIENT AND NOT GREATER THAN NECESSARY

A fifty-one month custodial sentence at the low end of the Guidelines' range reflects the seriousness of defendant's offense

7

conduct and criminal history, balanced against the mitigating factors in this case, including defendant's challenging childhood and early acceptance of responsibility.

The circumstances of the offense were moderately serious. For at least six years, including while incarcerated, defendant engaged in a scheme to defraud the IRS and obtain fraudulent refunds from the U.S. Treasury, including at least 182 fraudulent filings and attempted filings. (PSR ¶ 34.) Defendant engineered data entries to the IRS Form 1040EZ, using fabricated amounts which he knew would lead to claims for resulting tax refunds, and used identification belonging to more than ten victims unlawfully or without authority. As reflected by the voluminous submissions over an extensive amount of time, defendant's conduct was not the product of any mistake or short-term lapse in judgment, but was calculated behavior that defendant maintained for years that affected more than ten individual victims. In mitigation, the actual loss amount in this case is far lower than the intended loss which drives the Guidelines loss enhancement. (PSR ¶¶ 3, 29.)

Defendant is a former gang member (PSR ¶¶ 47, 49, 69, 80) and a convicted felon with a significant criminal history (PSR ¶¶ 45-75), who has been in custody for most of his adult life. (PSR ¶¶ 89, 112.) He committed the present offense while on parole in one case, on probation in another, and in custody on a third. (PSR ¶ 61.) Defendant has an extensive criminal history from 2003 to the present and has not previously been deterred by significant custodial sentences. (PSR ¶¶ 45-59.) However, the government agrees that in mitigation, as reflected in the PSR, the Court should take account of

the significant hardships faced by defendant during his childhood (PSR ¶¶ 77-89, 112) as well as other mental health and substance abuse challenges (PSR ¶¶ 97-107).  In addition, to his credit, defendant swiftly took responsibility for his conduct by accepting responsibility and pleading guilty, a mitigating factor which is correctly accounted for in his Guidelines calculations.  (See Dkt. 27.)  Also in mitigation, since defendant's offense conduct, defendant has made positive progress and formed several key, close relationships.

Based on the record as a whole, a low-end Guidelines range sentence sufficiently accounts for both the need to deter defendant, protect the public from future crimes, and avoid unwanted disparities with similarly situated defendants, weighed against the mitigating factors here relating to defendant.  The recommended low-end sentence of fifty-one months' imprisonment balances these concerns and is appropriate to ensure just punishment, promote respect for the law, and provide general deterrence to the public from committing tax fraud.

Finally, in accordance with the plea agreement, the government makes no recommendation as to whether the Court should order that defendant's federal sentence, as of the date imposed, run concurrent with defendant's sentence from the State of California pursuant to 18 U.S.C. § 3584.  (Dkt. 44, ¶ 5.g.; PSR ¶ 7(v).)

B.   THREE YEARS OF SUPERVISED RELEASE IS APPROPRIATE

The government also recommends that the Court impose a three-year term of supervised release, in light of the factors identified in 18 U.S.C. § 3583(c).  The Guideline range term of supervised

release is one to three years.  (See PSR ¶¶ 125-26; see also U.S.S.G. § 5D1.2(a)(2).)  Given defendant's lengthy criminal history and commission of the instant offense while he was already serving other sentences, a three-year supervised release term is needed to provide the additional incentive for defendant to refrain from committing future crimes, and will promote respect for the law.  (See PSR ¶¶ 45-75; 18 U.S.C. § 3583(c); 18 U.S.C. § 3553(a)(2)(B),(C).)

**V.   CONCLUSION**

For the foregoing reasons, the government recommends the Court sentence defendant to a low-end Guideline range sentence of fifty-one months' imprisonment, three years of supervised release, a mandatory special assessment of $200, and restitution in the amount of $16,435.13 to the U.S. Treasury.